IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DAVID EGILMAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:04-CV-00876 (HHK) |
| | § | |
| KELLER & HECKMAN, LLP, | § | |
| DOUGLAS J. BEHR, AND JONES DAY, | § | |
| 51 LOUISIANA AVENUE, N.W., | § | |
| WASHINGTON, D.C.  20001-2113, | § | |
| | § | |
| Defendants. | § | |

## DEFENDANT JONES DAY'S MOTION
## TO DISMISS FOR FAILURE TO STATE A CLAIM AND IMPROPER VENUE

Defendant Jones Day moves to dismiss the verified complaint filed by plaintiff David Egilman ("Egilman") under Rule 12(b)(6) for failure to state a claim and under Rule 12(b)(3) for improper venue with respect to Jones Day.

As demonstrated in the accompanying memorandum, each count of Egilman's Complaint against Jones Day is deficient and should be dismissed.  The first count, under the Computer Fraud and Abuse Act, fails because the statutory two-year limitations period bars the claim against Jones Day.  From the face of the Complaint, Jones Day's allegedly offensive conduct occurred in June 2001 and Egilman did not file the Complaint until May 28, 2004.  The second count, under the Digital Millennium Copyright Act, fails because using a username/password combination without permission does not constitute circumvention of security measures under that statute.  The third count, for common law trespass to personal property, fails because Egilman does not allege any damage to his computer.  Finally, the entire case against Jones Day should be dismissed for improper venue pursuant to Egilman's written agreement with Jones Day setting venue in Harris County, Texas.

For the foregoing reasons and those set out in the accompanying memorandum, Jones Day's motion to dismiss should be granted.

Respectfully submitted,

Stephen M. McNabb (D.C. Bar No. 367102)
FULBRIGHT & JAWORSKI L.L.P.
801 Pennsylvania Avenue, N.W.
Washington, D.C.  20004-2623
(202) 662-0200
(202) 662-4643 (fax)

Robert S. Harrell
Rick L. Rambo (D.C. Bar No. 452849 (Inactive))
FULBRIGHT & JAWORSKI L.L.P.
1301 McKinney, Suite 5100
Houston, Texas  77010-3095
(713) 651-5151
(713) 651-5246 (fax)

ATTORNEYS FOR DEFENDANT JONES DAY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DAVID EGILMAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:04-CV-00876 (HHK) |
| | § | |
| KELLER & HECKMAN, LLP, | § | |
| DOUGLAS J. BEHR, AND JONES DAY, | § | |
| 51 LOUISIANA AVENUE, N.W., | § | |
| WASHINGTON, D.C.  20001-2113, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT JONES DAY'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND IMPROPER VENUE

Defendant Jones Day respectfully submits this memorandum in support of its Motion to Dismiss the Verified Complaint filed by plaintiff David Egilman ("Egilman") under Rule 12(b)(6) for failure to state a claim and under Rule 12(b)(3) for improper venue with respect to Jones Day.

### INTRODUCTION

Over three years ago, in a proceeding in Colorado state court, Jones Day brought to the attention of that court Egilman's blatant violation of a court order. Egilman has pursued a vendetta against Jones Day ever since. Egilman has pursued this vendetta in a variety of legal proceedings across the country under a variety of legal theories. This case is the latest in Egilman's campaign of retribution. It is baseless and should be dismissed.

The incident about which Egilman complains was itself a litigation gambit of his creation in a trial in Golden, Colorado. Egilman was testifying for the party opposing Jones Day's client. An order of the Colorado court prohibited the parties and their experts from posting information about the case, the parties, or their attorneys on their websites. In spite of this order, Egilman

deliberately "baited" Jones Day by placing on his website "demonstrably false" and inflammatory statements suggesting that Jones Day had bribed the Colorado court. When Jones Day showed these scurrilous web postings to the court, the court held that the postings violated its prior order and struck his testimony. Egilman then embarked on a multistate campaign of vexatious litigation. This action is the latest chapter.

Shortly after being sanctioned by the original trial court, Egilman filed grievance proceedings in three different states against a number of Jones Day lawyers. Egilman next filed suit in Brazoria County, Texas, alleging various state law torts. Realizing he had no hope of maintaining venue in that forum, Egilman and his Texas lawyers agreed to venue in Harris County, Texas, and the case was transferred there by agreement. Egilman then proceeded to violate his discovery obligations and the order of the Texas court compelling him to comply with those obligations. Facing a further motion to compel while continuing to ignore the Texas court's order, Egilman voluntarily dismissed his Texas case and refiled in this Court, this time raising federal claims.

In this case, Egilman effectively asks for an award of damages for Jones Day's bringing his violation of the Colorado court order to the attention of the Colorado court, after that court and the Colorado court of appeals have held that Egilman's conduct was deserving of sanctions as opposed to remuneration. This case is at least Egilman's fifth bite at the apple; it should be dismissed.

### SUMMARY OF ARGUMENT

Each count of Egilman's Complaint against Jones Day is deficient and should be dismissed. The first count, under the Computer Fraud and Abuse Act, fails because the statutory two-year limitations period bars the claim against Jones Day. From the face of the Complaint, Jones Day's allegedly offensive conduct occurred in June 2001 and Egilman did not file the

Complaint until May 28, 2004. The second count, under the Digital Millennium Copyright Act, fails because using a username/password combination without permission does not constitute circumvention of security measures under that statute. The third count, for common law trespass to personal property, fails because Egilman does not allege any damage to his computer. Finally, the entire case against Jones Day should be dismissed for improper venue pursuant to Egilman's written agreement with Jones Day setting venue in Harris County, Texas.

## FACTUAL BACKGROUND

1.    **The *Ballinger* Lawsuit in Colorado**

This saga began in Colorado, in a case in which Egilman was retained as an expert for the plaintiffs and Jones Day represented the defendants. Complaint ¶¶ 13, 16. That case was *Ballinger v. Brush Wellman, Inc.*, No. 96-CV-2532, Division 5, In the District Court for Jefferson County, Colorado. On May 30, 2001, the presiding judge in the *Ballinger* case, Judge Plaut, entered an Order Prohibiting Certain Extrajudicial Statements. *See* Order Prohibiting Certain Extrajudicial Statements at 1-2 (filed as Exhibit A to this Motion).[1] This order was necessitated by (1) substantial pretrial publicity, (2) certain statements on Egilman's website that the court found were "intemperate and relate[d] to subjects that [the court had ruled were] inadmissible at trial," and (3) the widespread availability of the Internet. *See* Exh. A,

---

[1] The Court may take judicial notice of filings from cases in other federal or state courts without converting this motion into a motion for summary judgment. *Does I through III v. District of Columbia*, 238 F. Supp. 2d 212, 216 (D.D.C. 2002) ("It is well established that courts are allowed to take judicial notice of matters in the general public record, including records and reports of administrative bodies and records of prior litigation without triggering the conversion requirement.") (citations and internal quotation marks omitted); *United States v. Dancy*, 510 F.2d 779, 786-87 (D.C. Cir. 1975) (taking judicial notice of hearings in a prior case); *Paul v. Dade County*, 419 F.2d 10, 12 (5th Cir. 1969) (while the prior state case "was not made part of the record on this appeal, we may, of course, take judicial notice of it"); *McLellan Stores Co. v. Weaver*, 238 F.2d 232, 233 (6th Cir. 1956) ("[T]he trial judge properly took judicial notice of the pleadings [and other court documents] . . . from which it appears that a voluntary nonsuit without prejudice was taken by appellees in [state court].").

Extrajudicial Statements Order at 1-2. The order expressly prohibited the parties as well as their experts -- such as Egilman -- from "publishing any statements on [their] Internet websites . . . concerning the trial proceedings, concerning any opposing party or any opposing party's counsel." (Exh. A, Extrajudicial Statements Order at 3.)

**2.    Egilman is Sanctioned for Violating the *Ballinger* Court's Order**

Despite Judge Plaut's Order, in June 2001 Egilman "placed a demonstrably false entry" on his website, allegedly after consulting with the Massachusetts Attorney General's office. *See* Complaint ¶ 14; Plaintiff's Original Petition at 3(filed as Exhibit D to this Motion). According to Egilman, the entry appeared on a restricted portion of his website. *Id.* ¶ 15. Defendants Behr and Keller & Heckman allegedly obtained a username/password for the site and disclosed it to a Jones Day attorney. *Id.* ¶ 16. Jones Day then allegedly accessed the site and printed certain pages of it. *Id.* ¶¶ 16-17.

Believing that the information on Egilman's website violated the Extrajudicial Statements Order, Jones Day brought the offending pages to the attention of the Colorado court. *Id.* ¶ 23. On June 22, 2001, Judge Plaut entered a sanctions order, finding that Egilman "knowingly, deliberately, intentionally and willfully violated the Court's 5/30/01 Order Prohibiting Certain Extrajudicial Statements." *See* Findings, Conclusions, and Orders Concerning Sanctions at 1 (filed as Exhibit B to this Motion). Other significant findings in the Sanctions Order include:

- "[T]he scurrilous and inflammatory statements posted by Dr. Egilman on his web site . . . cast great doubt on his legitimacy and integrity as a witness." *Id.*

- "Dr. Egilman's testimony was motivated by his personal agenda and by his animosity, bias, prejudice, hostility and vindictiveness against defendant and defendant's law firm [Jones Day]." *Id.* at 1-2.

- "Dr. Egilman is not a credible witness." *Id.* at 2.

- "By calling Dr. Egilman as a witness at trial when plaintiff's counsel knew he was out of control, said counsel placed in jeopardy the integrity of this entire trial." *Id.*

- "The Court has made it very clear in entering its 5/30/01 Order that it considered Dr. Egilman's vituperative web site statements to be grossly inappropriate and to place at risk the fairness of the trial." *Id.*

Because of Egilman's "flagrant violations" of the Extrajudicial Statements Order, Judge Plaut

ordered that Egilman's testimony be stricken, that the jury disregard his testimony in its entirety,

and that Egilman not be permitted to testify in any other case in that court. *Id.* at 2-3.[2]

## 3.    Egilman Continues His Campaign Against Jones Day in Colorado and Other States

Egilman retaliated against Jones Day on numerous fronts. He initiated grievance

proceedings against Jones Day lawyers in three different states. Those proceedings, of course,

are confidential. Egilman filed suit in Brazoria County, Texas. He sued Jones Day as well as a

librarian and a partner in Jones Day's Dallas office, again accusing them of accessing his website

and obtaining the Sanctions Order. *See* Exh. D.[3] He alleged conversion, trespass to personalty,

and business disparagement. *See id.* After initially opposing Jones Day's motion to transfer

venue, Egilman eventually conceded venue could not be maintained in Brazoria County, and the

parties entered into an Agreement Not to Contest Transfer (filed as Exhibit E to this motion).[4]

The venue agreement specifically provided that the parties "will not contest: (a) the

transfer of the case from Brazoria County, Texas to Harris County, Texas and (b) that venue is

---

[2] The portion of Judge Plaut's Sanctions Order barring Egilman from future appearances was vacated on appeal; however, the remainder of the Sanctions Order was left intact. *See* September 5, 2002 Order of Colorado Court of Appeals ("In all other respects, the orders are affirmed.") (filed as Exhibit C to this Motion).

[3] Egilman later added numerous other defendants to the suit, including Douglas J. Behr and Keller & Heckman, LLP.

[4] In deciding a Rule 12(b)(3) motion to dismiss for improper venue, a court is not limited to reviewing the pleadings and other items of which it may take notice. It is only Rule 12(b)(6) motions that may require conversion to summary judgment if extraneous matters are considered. *See* Fed. R. Civ. P. 12(b). Jones Day submits the Agreement Not to Contest Transfer solely in support of its Rule 12(b)(3) motion.

proper in Harris County, Texas for purposes of this case only." *Id.* ¶ 3. The parties further agreed that they would "not contend that venue is proper in any county in Texas other than Harris County, Texas." *Id.* Pursuant to the agreement of the parties, the case was transferred to Harris County, Texas. *See* Order Granting Unopposed Motion to Transfer Venue (filed as Exhibit F to this Motion).

The abusive conduct Egilman had displayed before the Colorado court continued in Texas. Egilman failed to comply with his discovery obligations, and the Texas court repeatedly had to order Egilman to respond to the Jones Day defendants' discovery as required under the Texas Rules of Civil Procedure. *See, e.g.,* Order Granting Motion to Compel as to Second Set of Requests for Production (filed as Exhibit G to this Motion); Order Concerning Defendant's Motion to Compel (filed as Exhibit H to this Motion).

When Egilman did not comply with the court's order compelling production, the Jones Day librarian filed a motion to enforce the order. *See* Defendant's Motion to Enforce Order to Compel Discovery Responses from Plaintiff (filed [without exhibits] as Exhibit I to this Motion). The Texas court thus had to issue another order, this time compelling Egilman to comply with its prior order. *See* Order Regarding Motion to Enforce Order to Compel (filed as Exhibit J to this Motion). In the meantime, the Jones Day librarian had to file yet another motion to compel Egilman to respond to other outstanding discovery requests, and set the motion for a hearing. *See* Defendant's Second Motion to Compel Discovery Responses from Plaintiff and Notice of Hearing (filed [without exhibits] as Exhibit K to this Motion).

Rather than comply with the order enforcing the first motion to compel, and faced with a hearing on another motion to compel, Egilman voluntarily dismissed the Texas case. *See* Notice

of Non-Suit Without Prejudice as to all Defendants (filed as Exhibit L to this Motion).[5]  Egilman

then refiled his lawsuit in this Court, alleging violation of the Computer Fraud and Abuse Act, 18

U.S.C. § 1030; violation of the Digital Millennium Copyright Act of 1998, 17 U.S.C. § 1201;

and common law claims.

## DISCUSSION

### 1.    The Complaint Fails to State a Claim Upon Which Relief May Be Granted

Dismissal for failure to state a claim is proper when, after taking all factual allegations as

true and drawing all reasonable inferences in favor of the plaintiff, it appears that the plaintiff

can prove no facts in support of its claim that would entitle it to relief. *Mountain States Legal*

*Found. v. Bush*, 306 F.3d 1132, 1134 (D.C. Cir. 2002), *cert. denied*, 124 S. Ct. 61 (2003).  In

deciding a motion to dismiss, "'the court need not accept inferences drawn by plaintiffs if such

inferences are unsupported by the facts set out in the complaint.'"  *Id.* at 1134 (citation omitted).

Moreover, "the court is 'not bound to accept as true a legal conclusion couched as a factual

allegation.'"  *Id.* at 1136-37 (citation omitted) (affirming dismissal under Fed. R. Civ. P. 12(b)(6)

where complaint contained only "bald assertions," "legal conclusions," and failed to allege "any

facts sufficient to support its . . . claim").

Applying this standard for dismissal, Egilman's Complaint on its face cannot survive a

motion to dismiss.  Egilman alleges that Jones Day visited protected portions of his computer

without permission, discovered material on his website that violated the order of a Colorado

court, and brought that to the attention of the Colorado court.  Egilman contends that this alleged

conduct violates the Computer Fraud and Abuse Act and the Digital Millennium Copyright Act

and constitutes trespass to personal property.  As set forth below, each of these allegations is

---

[5] At the time, the operative pleading in the Texas case was Plaintiff's Fifth Amended Petition
(filed as Exhibit M to this Motion).

deficient as a matter of law and must be dismissed. Moreover, venue is improper because the agreement between Egilman and Jones Day fixes venue in Harris County, Texas.

**2.     Limitations Bar Egilman's Claim Under the Computer Fraud and Abuse Act**

Egilman's claim for an alleged violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, is barred by limitations. Dismissal under Rule 12(b)(6) is appropriate when a claim is time barred. *See, e.g., Barr v. Clinton*, 370 F.3d 1196, 1202 (2004) (affirming dismissal on grounds of limitations). The CFAA expressly provides that "[n]o action may be brought under this subsection unless such action is begun within 2 years of the date of the act complained of or the date of the discovery of the damage." 18 U.S.C. § 1030(g). [6]

Lawyers at Jones Day visited allegedly protected portions of Egilman's website in June 2001, and other Jones Day lawyers promptly brought the scurrilous content to the attention of the Colorado court in the *Ballinger* case. Complaint ¶ 16-17, 23; Sanctions Order, Exh. B. Thus, by the time of the June 22, 2001 Sanctions Order, Egilman was well aware of what Jones Day had done in June 2001. Egilman does not allege that he discovered what Jones Day had done at any later time.

Egilman did not file this lawsuit until May 28, 2004, well over two years after June 2001. Egilman's claim under the CFAA is thus time-barred. [7]

_____

[6] Limitations was not tolled while the Texas case was pending. *See, e.g., York and York Constr. Co. v. Alexander*, 296 A.2d 710, 712 (D.C. 1972) ("Under the general rule, the statute of limitations is not tolled by the pendency of an action which is voluntarily dismissed without prejudice."); *Wagner v. Georgetown Univ. Med. Ctr.*, 768 A.2d 546, 558 (D.C. 2001) ("When the Wagners voluntarily dismissed their original complaint against Dr. Lobrine without prejudice, the running of the statute of limitations on their claims was not tolled."); *Guaranty County Mut. Ins. Co. v. Reyna*, 700 S.W.2d 325, 327 (Tex. App. -- San Antonio 1985, writ ref'd n.r.e.) (Texas courts have "consistently held that limitations is not tolled during the pendency of a suit voluntarily abandoned by the plaintiff.") (collecting cases).

[7] In addition to being barred by limitations, the Complaint fails to state a CFAA claim on the merits. Egilman, who asserts solely reputational injury, alleges no "loss" as defined in the

**3.      Egilman Fails to State a Claim Under the Digital Millennium Copyright Act**

Egilman fails to state a claim for violation of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. 1201, because entering a username/password combination without permission does not amount to circumvention of security measures under the DMCA.

Under the DMCA, "[n]o person shall circumvent a technological measure that effectively controls access to a work protected under this title." 17 U.S.C. § 1201(a)(1)(A). The DMCA further provides that:

> As used in this subsection . . . to 'circumvent a technological measure' means to descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner . . . .

17 U.S.C. § 1201(a)(3).

The only court to address the specific issue of whether a "defendant, by accessing [a plaintiff's] computer system through the unauthorized use of a password issued to a party other than defendant, violated the DMCA's bar on circumventing a technological measure that effectively controls access to protected work," has determined that it does not. *I.M.S. Inquiry Mgmt. Sys., Ltd. v. Berkshire Info. Sys., Inc.*, 307 F. Supp. 2d 521, 532-33 (S.D.N.Y. 2004). In that case, the plaintiff owned a web-based service that its clients used to track magazine advertising. *Id.* at 523. The service contained copyrightable subject matter that was selected by the plaintiff and organized into categories and subcategories, which required "substantial creativity, time, and effort." *Id.* The *I.M.S.* defendant obtained a user identification and

---

CFAA. See 18 U.S.C. § 1030(e)(11); *Nexans Wires S.A. v. Sark-USA, Inc.*, 319 F. Supp. 2d 468, 475 ("the meaning of 'loss' . . . has consistently meant a cost of investigating or remedying damage to a computer, or a cost incurred because the computer's service was interrupted"). Further, Egilman alleges no factual basis that would support his conclusion that Jones Day had any "intent to defraud" as required under 18 U.S.C. §§ 1030(a)(4) and 1030(a)(6).

password issued to a third party to access the plaintiff's service, gather and copy about 85% of

the service's report formats, and then use that material to start its own competing service. *Id.*

Despite the egregious nature of the defendant's use of the material, the court noted that

the plaintiff accused the defendant only of using the plaintiff's own customer's valid password

and user identification to access the plaintiff's system exactly as the customer itself might have

done. *Id.* at 532. The court declined to impose DMCA liability under those circumstances:

> We agree that plaintiff's allegations do not evince circumvention as that term is
> used in the DMCA. Circumvention requires either descrambling, decrypting,
> avoiding, bypassing, removing, deactivating or impairing a technological measure
> *qua* technological measure. In the instant matter, defendant is not said to have
> avoided or bypassed the deployed technological measure in the measure's
> gatekeeping capacity. The Amended Complaint never accuses defendant of
> accessing the [plaintiff's] system without first entering a plaintiff-generated
> password.
>
> More precisely and accurately, what defendant avoided and bypassed was
> **permission** to engage and move through the technological measure from the
> measure's author. Unlike the CFAA, a cause of action under the DMCA does not
> accrue upon unauthorized and injurious access *alone*; rather, the DMCA 'targets
> the **circumvention** of digital walls guarding copyrighted material.'

*Id.* (quoting *Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 443 (2d Cir. 2001) (emphasis

in original)).

The court further reasoned that the "[d]efendant did not surmount or puncture or evade

any technological measure to [access plaintiff's protected website without plaintiff's

authorization]; instead, it used a password intentionally issued by plaintiff to another entity."

*I.M.S.*, 307 F. Supp. 2d at 532-33. The court noted that it was as if the defendant had borrowed

without permission the same means of access to the website that the owner had given by

permission to someone else. *Id.* at 533. The defendant entered the plaintiff's website via a

means provided by the plaintiff, in the manner that the plaintiff intended it to be entered. *See id.*

"Whatever the impropriety of defendant's conduct, the DMCA and the anti-circumvention

provision at issue do not target this sort of activity." *Id.* Accordingly, the court dismissed the DMCA claim.

Here, by contrast, Jones Day made no commercial use whatsoever of the material it allegedly obtained from Egilman's computer. And, like *I.M.S.,* Jones Day did not avoid or bypass a technological measure in Egilman's computer's password, but merely obtained from a third party a password otherwise authorized by Egilman for access to his computer. As in *I.M.S.,* Egilman's allegations against Jones Day fail to state a claim under the DMCA. Egilman's DMCA claim against Jones Day should therefore be dismissed.

4.    **Egilman's Claim for Trespass to Personal Property Should be Dismissed**

      A.    **Egilman Has Alleged No Damage to Personal Property**

Egilman's claim for trespass to personal property should be dismissed because he has alleged no damage to his personal property.[8] The Restatement rule that actual damage to the chattel is required to establish liability for trespass to personal property has been adopted in Texas, Massachusetts, and the District of Columbia -- the three jurisdictions cited by Egilman. *See Zapata v. Ford Motor Credit Co.,* 615 S.W.2d 198, 201 (Tex. 1981) (trespass does not create liability unless there is "actual damage to the property" or the owner of the property is "deprive[d] . . . of its use for a substantial period of time"); *Omnibus Int'l, Inc. v. AT&T, Inc.,* 111 S.W.3d 818, 826 (Tex. App.--Dallas 2003, pet. granted, judgm't vacated w.r.m.) ("[f]or liability to attach, causing *actual damage* to the property or *depriving the owner of its use for a*

---

[8] Count III of the Complaint, which is labeled "Common Law Claims," alleges that the Defendants violated the laws of Texas, Massachusetts and the District of Columbia by accessing Egilman's computer without his consent. The only common law claim that could arise (even inferentially) from the allegations of the Complaint would be trespass to personal property. *See Bennett v. Schmidt,* 153 F.3d 516, 519 (7th Cir. 1998) (explaining that Rule 8's notice pleading requirement means that general references to state law in pleadings can support only those claims about which the claim gives notice).

*substantial period* must accompany the wrongful interference"); *New Eng. Tel. & Tel. Co. v. Nat'l Merch. Corp.*, 141 N.E.2d 702, 706 (Mass. 1957) ("[r]ecovery or relief for trespass or injury to a chattel . . . is ordinarily possible only where physical harm is shown . . . here no physical harm has been proved"); *Pearson v. Dodd*, 410 F.2d 701, 707 (D.C. Cir. 1969) ("liability for trespass to chattels exists only on a showing of actual damage to the property interfered with"). As a result of the harmony in this area, this case can be dismissed without a choice of law analysis regarding which jurisdiction's laws apply.

The Restatement states that "trespass to a chattel may be committed by intentionally . . . using or intermeddling with a chattel in the possession of another." RESTATEMENT (SECOND) OF TORTS § 217 (1965) (the "Restatement"). In the event of dispossession of the chattel, no impairment of the chattel is required. *Id.* at § 218(a). However, absent dispossession, liability can be established if and only if:

> (b) the chattel is impaired as to its condition, quality, or value, or
>
> (c) the possessor is deprived of the use of the chattel for a substantial time, or
>
> (d) bodily harm is caused to the possessor, or harm is caused to some person or thing in which the possessor has a legally protected interest.

*Id.* at § 218.

Egilman does not allege that he was dispossessed of his computer, deprived of the use of his computer, or caused bodily harm. Egilman has not alleged that his computer was harmed in any way; rather, Egilman alleges only damage to his reputation.

The seminal case applying the hoary doctrine of trespass to chattel in the computer context also requires damage to the chattel. *Intel Corp. v. Hamidi*, 71 P.3d 296, 303, 306 (Cal. 2003). After he was dismissed by Intel, Hamidi accessed the company's e-mail system to send messages criticizing the company to 35,000 Intel employees at their Intel work e-mail addresses.

*Id.* at 299, 301. Following Intel's unsuccessful attempts to convince Hamidi to stop sending the e-mails, and unsuccessful attempts to prevent the receipt of the e-mails, Intel brought suit against Hamidi claiming trespass to chattel. *Id.*

The *Intel* court explained that an interference not amounting to dispossession of a chattel, is not actionable "without a showing of harm." *Id.* at 303 (citations omitted). Thus, for a computer trespass claim to be actionable, the conduct involved must "interfere with the intended functioning of the system, as by significantly reducing its available memory and processing power." *Id.* at 306 (summarizing the case law involving electronic trespass). The court considered it dispositive that there was no damage to "Intel's computer hardware or software and no interference with its ordinary and intended operation." *Id.* at 303, 306. Consequently, the court concluded that Intel could not meet the harm requirement. *Id.* at 307.

The *Intel* court soundly rejected the argument that indirect economic injury like loss of business reputation or customer goodwill could be considered harm to "a legally protected interest" in personal property under Section 218(d) of the Restatement. *Id.* at 307-08. To the contrary, Section 218(d) "is intended to cover personal injury to the possessor or another person in whom the possessor has a legal interest, or injury to 'other chattel or land' in which the possessor of the chattel subject to the trespass has a legal interest." *Id.* at 307 n.6 (citing Restatement § 218, com. j, p. 423). Indirect economic losses like business reputation or goodwill are not injury to either "chattel or land." *Id.*

The *Intel* court refused "to stretch trespass law to cover injuries far afield from the harms to possession the tort evolved to protect." *Id.* at 308. For purposes of its trespass claim, Intel was required to, but did not, "demonstrate some measurable loss from the use of its computer system." *Id.* at 307. The court, therefore, held that "[w]hile unwelcome communications . . . can

cause a variety of injuries to economic relations, reputation and emotions, those interests are protected by other branches of tort law." *Id.*

As in *Intel*, Egilman does not allege damage to his computer from any alleged access by Jones Day. Instead, Egilman alleges indirect damage to his reputation, which should be rejected on the same grounds that the *Intel* court rejected Intel's untenable arguments to consider reputation or goodwill as harm to a legally protected interest in personal property.

As a result, Egilman's claim for trespass to personal property should be dismissed.

### B.    The Conduct From Which the Alleged Harm Arose is Absolutely Privileged

A second independent reason for dismissing Egilman's claim for trespass to personal property is that Egilman's alleged injury arose from conduct of Jones Day lawyers during the course of judicial proceedings, which is absolutely privileged. Injury is an essential element of Egilman's trespass claim. *Intel*, 71 P.3d at 306. Egilman's sole allegation of injury is the alleged damage to his reputation when Jones Day presented pages from his website to the Colorado court and a Texas court. *See* Complaint ¶¶ 23, 24.

The law in each of the three jurisdictions under which Egilman purports to bring his claims makes clear that a lawyer's conduct in connection with judicial proceedings cannot be the basis of liability to a third party. *E.g.*, *Finkelstein, Thompson & Loughran v. Hermispherx Biopharma, Inc.*, 774 A.2d 332, 338 (D.C. 2001) ("Along with the overwhelming majority of the States, the District of Columbia has long recognized an absolute privilege for statements made preliminary to, or in the course of, a judicial proceeding, so long as the statements bear some relation to the proceeding."); *Lucas v. Newton Wellesley Hosp.*, 13 Mass. L. Rptr. 352, 2001 WL 834618, *3 (Mass. Super. 2001) ("'This policy would be severely undercut if the absolute privilege were to be regarded as less than a bar to *all actions* arising out of the conduct of parties and/or witnesses in connection with a judicial proceeding.'") (citations omitted) (emphasis in

original); *Lewis v. American Exploration Co.*, 4 F. Supp. 2d 673, 678 (S.D. Tex. 1998) ("'Under Texas law, attorneys cannot be held liable for wrongful litigation conduct.'") (quoting *Renfroe v. Jones & Assoc.*, 947 S.W.2d 285, 288 (Tex. App. -- Fort Worth 1997, writ denied)).

Egilman's trespass claim should thus be dismissed because the conduct from which his alleged injury arose is absolutely privileged.

## 5.    Jones Day Should Be Dismissed from the Case for Improper Venue

With respect to Jones Day, this case should be dismissed under Rule 12(b)(3) for improper venue because of the parties' agreement that venue would be in Harris County, Texas.[2] A venue agreement, like a forum-selection clause, "is best understood as a potential defendant's *ex ante* agreement to waive venue objections to a particular forum." *Marra v. Papandreou*, 216 F.3d 1119, 1123 (D.C. Cir. 2000) (citing *Northwestern Nat'l Ins. Co. v. Donovan*, 916 F.2d 372, 375-76 (7th Cir. 1990)). A venue agreement is thus "an agreement between the parties to settle disputes in a particular forum." *Id.* (affirming dismissal because of the parties' contractual selection of Greece as the forum for adjudicating disputes). *See also Commerce Consultants Int'l, Inc. v. Vetrerie Riunite*, 867 F.2d 697 (D.C. Cir. 1989) (affirming dismissal under Rule 12(b)(3) for improper venue because contract required suit to be brought in Italy).

As demonstrated above, Egilman expressly agreed with Jones Day that venue was proper in, and that he would not contest venue in, Harris County, Texas for purposes of this case. *See* Exh. E ¶ 3. Texas, of course, made sense because a number of Jones Day's witnesses are in Texas. Further, Jones Day would be prejudiced by Egilman's disregard of the agreement because Jones Day's outside counsel in Texas has devoted significant time to and effort on the

---

[2] Defendants Douglas J. Behr and Keller & Heckman had objected to personal jurisdiction in Texas and signed the Agreement Not To Contest Venue only subject to and without waiving or forfeiting defenses related to personal jurisdiction. *See* Exh. E ¶¶ 1-3.

case in Texas.  The counsel who retained Egilman in the *Ballinger* case are in Texas.  Egilman was not free, therefore, to refile his suit against Jones Day anywhere other than Harris County, Texas.  The agreement between the parties should be enforced, and this suit should be dismissed for improper venue.

### CONCLUSION

For the foregoing reasons, Jones Day's motion to dismiss should be granted.

Respectfully submitted,

Stephen M. McNabb (D.C. Bar No. 367102)
FULBRIGHT & JAWORSKI L.L.P.
801 Pennsylvania Avenue, N.W.
Washington, D.C.  20004-2623
(202) 662-0200
(202) 662-4643 (fax)

Robert S. Harrell
Rick L. Rambo (D.C. Bar No. 452849 (Inactive))
FULBRIGHT & JAWORSKI L.L.P.
1301 McKinney, Suite 5100
Houston, Texas  77010-3095
(713) 651-5151
(713) 651-5246 (fax)

ATTORNEYS FOR DEFENDANT JONES DAY